1                                                     O

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| LATASHA McCASKILL, | Case No. EDCV 14-1770 RNB |
|            Plaintiff, | |
| vs. | ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
|            Defendant. | |

      The Court now rules as follows with respect to the two disputed issues listed in the Revised Joint Stipulation.[1]

**A.**    <u>**Reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination (Disputed Issue One).**</u>

      Disputed Issue One is directed to the ALJ's adverse credibility determination

---

     [1]     The decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Revised Joint Stipulation ("Revised Jt Stip") filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1    with respect to plaintiff's subjective symptom testimony.  (See Revised Jt Stip at 3-

2    15.)

3         An ALJ's assessment of pain severity and claimant credibility is entitled to

4    "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.

5    Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  Under the "Cotton test," where the

6    claimant has produced objective medical evidence of an impairment that could

7    reasonably be expected to produce some degree of pain and/or other symptoms, and

8    the record is devoid of any affirmative evidence of malingering, the ALJ may reject

9    the claimant's testimony regarding the severity of the claimant's pain and/or other

10   symptoms only if the ALJ makes specific findings stating clear and convincing

11   reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see

12   also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12

13   F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991)

14   (en banc).

15        Plaintiff alleged that she was disabled because of a skin disease, depression,

16   fibromyalgia, asthma, and glaucoma.  (See 1 AR 60.)  During the administrative

17   hearing, plaintiff testified as follows about her limitations, treatment, and activities.

18   On many days, she cannot get out of bed.  (See id. 48.)  She can usually walk for less

19   than one block at a time and can lift one gallon of milk.  (See id. 46.)  On a typical

20   day, she spends a lot of time lying around with feelings of depression.  (See id. 47.)

21   She avoids going out because she cannot interact properly with other people.  (See

22   id. 50.)  She was hospitalized in November 2011 for suicidal thoughts and has since

23   received regular psychiatric treatment.  (See id. 51, 53.)  She has psoriasis on the

24   bottom of her feet that limits her ability to walk and  sometimes requires her to use

25   a wheelchair.  (See id. 51.)  Although plaintiff is a single parent of four children, her

26   fifteen-year-old daughter "does a lot of things" to help care for the younger children.

27   (See id. 47, 50.)

28   //

2

1    The ALJ determined that, although plaintiff's medically determinable
2   impairments could reasonably be expected to cause the alleged symptoms, plaintiff's
3   statements concerning the intensity, persistence, and limiting effects of his symptoms
4   were "not entirely credible." (See 1 AR 24.)  In support of this adverse credibility
5   determination, the ALJ proffered three reasons.

6    One of the reasons proffered by the ALJ was that plaintiff's treatment history,
7   specifically her mental health treatment history, reflected that plaintiff was not always
8   compliant with her medications and that her symptoms worsened when she was not
9   taking her medications. (See 1 AR 27.)  Although plaintiff contends that this reason
10  was improper in light of the voluminous evidence of her compliance with her *physical*
11  health treatment (see Revised Jt Stip at 14), the Court disagrees because this reason
12  properly focused on plaintiff's gaps in compliance with her *mental* health treatment
13  and its adverse consequence on plaintiff's credibility about her alleged *mental*
14  symptoms.   Moreover, the record contains evidence that plaintiff's gaps in
15  compliance with her mental health treatment – through missed appointments and
16  failure to take medications – occurred repeatedly (see 2 AR 1131, 1151, 1152, 1154,
17  1159, 1160), which the Court finds rose to the level of substantial evidence.

18   The Court is mindful that the Ninth Circuit has cautioned that a claimant's lack
19  of compliance with her mental health treatment should not be a basis for an ALJ's
20  adverse finding against her when her lack of compliance is attributable to her mental
21  illness. See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a
22  questionable practice to chastise one with a mental impairment for the exercise of
23  poor judgment in seeking rehabilitation.") (citation omitted).  Here, however, the
24  record contains no evidence that plaintiff's failure to comply with her mental health
25  treatment was attributable to her mental impairment. See Molina v. Astrue, 674 F.3d
26  1104, 1114 (9th Cir. 2012) (ALJ's adverse credibility determination properly
27  accounted for claimant's resistance to psychiatric treatment where "there was no
28  medical evidence that [claimant's] resistance was attributable to her mental

3

impairment rather than her own personal preference"). Accordingly, the Court finds that this was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See Molina, 674 F.3d at 1113 (in assessing credibility, an ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment); Tommassetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (same); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (same).

Another reason proffered by the ALJ for his adverse credibility determination was that plaintiff's daily activities, which allegedly were minimal and consisted of lying around all day, were inconsistent with plaintiff's acknowledged role as the primary caretaker for her children, including a child born in 2006. (See 1 AR 27.) Although plaintiff points out that she received help from her daughter in caring for the other children (see Revised Jt Stip at 14), the Court finds that the ALJ nonetheless could have reasonably found that the undisputed fact that plaintiff acted as the primary caretaker for her children (even with help) was inconsistent with lying around all day. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Accordingly, the Court finds that this also was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (finding that claimant's pain testimony was undermined where claimant's daily activities included attending to the needs of her two young children); Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (same where claimant's activities included occasional care for a friend's child); see generally Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (evidence that claimant's daily activities suggested a higher degree of functionality than reflected in her subjective symptom testimony may support an adverse credibility determination); Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693

1   (9th Cir. 2009) (same); <u>Bray v. Commissioner of Social Security Admin.</u>, 554 F.3d

2   1219, 1227 (9th Cir. 2009) (same); <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007)

3   (same).

4        The final reason proffered by the ALJ for his adverse credibility determination

5   was that plaintiff's alleged inability to interact with other people was inconsistent

6   with her documented ability to interact with a consultative psychiatrist during a

7   consultative examination and her observed ability to interact with the ALJ and office

8   staff before and during the administrative hearing.  (<u>See</u> 1 AR 21; <u>see also</u> 2 AR

9   1005-11.)   Although plaintiff points out that such interactions were brief and

10  therefore said nothing about plaintiff's ability to interact with people during a 40-hour

11  workweek (<u>see</u> Revised Jt Stip at 9-10), the Court disagrees because plaintiff's ability

12  to engage in these interactions, even briefly, was inconsistent with plaintiff's

13  testimony that she could engage in almost no interactions.  Accordingly, the Court

14  finds that this also was a legally sufficient reason on which the ALJ could properly

15  rely in support of his adverse credibility determination.  <u>See</u> <u>Molina</u>, 674 F.3d 1113

16  (ALJ properly rejected claimant's testimony that she could not tolerate even minimal

17  human interaction in part because of her appropriate demeanor during a consultative

18  examination); <u>see also</u> <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1259 (9th Cir. 1992) (ALJ

19  may properly rely on his own observations at the administrative hearing as one factor

20  in support of an adverse credibility determination); <u>Verduzco v. Apfel</u>, 188 F.3d

21  1087, 1090 (9th Cir. 1999) (inclusion of ALJ's personal observations of plaintiff

22  during hearing did not render the decision improper).

23        In conclusion, the Court finds that reversal is not warranted based on the ALJ's

24  alleged failure to make a proper adverse credibility determination.

25

26  **B.**    **The ALJ failed to properly consider the treating psychiatrist's opinion**

27       **(Disputed Issue Two).**

28       Disputed Issue Two is directed to the ALJ's consideration of the opinion of Dr.

1   Gill, a treating psychiatrist.  (See Revised Jt Stip at 15-23.)

2         The law is well established in this Circuit that a treating physician's opinion
3   is entitled to special weight because a treating physician is employed to cure and has
4   a greater opportunity to know and observe the patient as an individual.  See
5   McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating physician's
6   opinion is not, however, necessarily conclusive as to either a physical condition or the
7   ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.
8   1989).  The weight given a treating physician's opinion depends on whether it is
9   supported by sufficient medical data and is consistent with other evidence in the
10  record.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If the treating physician's
11  opinion is uncontroverted by another doctor, it may be rejected only for "clear and
12  convincing" reasons.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter
13  v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991).  Where, as here, a treating
14  physician's opinion is controverted, it may be rejected only if the ALJ makes findings
15  setting forth specific and legitimate reasons that are based on the substantial evidence
16  of record.  See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A
17  treating physician's opinion on disability, even if controverted, can be rejected only
18  with specific and legitimate reasons supported by substantial evidence in the
19  record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th
20  Cir. 1987).

21        Dr. Gill issued an opinion in which he stated the following.  Plaintiff suffered
22  from bipolar disorder (not otherwise specified) and post-traumatic stress disorder.
23  (See 2 AR 1133.) These diagnoses were supported by the following clinical findings:
24  depressed mood, psychomotor retardation, paranoia, auditory hallucinations,
25  problems with concentration, forgetfulness, lack of energy, and insomnia.  (See id.)
26  As a result of her mental impairments, plaintiff had several serious limitations in her
27  abilities and aptitudes to perform unskilled, semiskilled, and skilled work.  (See id.

28

1135-36.)[2]

The ALJ discussed Dr. Gill's opinion in two separate parts of his decision. First, the ALJ determined that, since Dr. Gill's opinion failed to address plaintiff's retained work capacity in spite of her impairments, there was no need to consider the opinion. (See 1 AR 26.) Both parties agree that this determination was erroneous because Dr. Gill's opinion did address plaintiff's retained work capacity in spite of her limitations. (See Revised Jt Stip at 17, 20.) Indeed, as noted above, Dr. Gill's opinion clearly stated that plaintiff had several serious limitations in her abilities and aptitudes to perform all types of work. (See 2 AR 1135-36.) Accordingly, the Court finds that this was not a legally sufficient reason on which the ALJ could properly rely to disregard Dr. Gill's opinion.

Second, the ALJ determined that Dr. Gill's opinion had provided no basis for finding that plaintiff had met her burden of showing that, at step three of the sequential evaluation process, her impairments met or equaled the requirements of Listing 12.04 (Affective Disorder). (See 1 AR 23.) Specifically, the ALJ rejected Dr. Gill's opinion as a basis for finding that plaintiff had met or equaled the requirements

_____

[2]      Specifically, Dr. Gill opined that plaintiff's mental functioning was "seriously limited" in the following work-related abilities: remember work-like procedures; maintain attention for two-hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; and deal with stress of semiskilled and skilled work. (See 2 AR 1135-36.)

1    of that listed impairment because: (1) no evidence showed four or more episodes of

2    decompensation within a 12-month period that were each of extended duration; (2)

3    no evidence showed plaintiff needed a highly supportive living arrangement; and (3)

4    plaintiff did not have marked limitations in concentration, persistence, or pace

5    because she performed appropriately at the consultative examination and the

6    administrative hearing. (See id.) Plaintiff does not challenge the correctness of these

7    particular findings; she instead contends that they address Dr. Gill's opinion only as

8    to the Commissioner's step three determination, not as to the Commissioner's

9    determination at steps four and five of the sequential evaluation process. (See

10   Revised Jt Stip at 16, 22.)

11       The Court concurs that the ALJ's consideration of Dr. Gill's opinion was

12   relevant only to the ALJ's step three determination. Most of Dr. Gill's opinion,

13   however, did not concern the step three determination, but instead concerned

14   plaintiff's serious limitations in her abilities and aptitudes to perform unskilled,

15   semiskilled, and skilled work (i.e., whether plaintiff could perform her past work or

16   other work in the national economy, as determined at steps four and five of the

17   sequential evaluation process). The ALJ's brief reasoning as to Dr. Gill's opinion

18   was non-responsive to these limitations; instead, as noted above, the ALJ overlooked

19   this essential part of Dr. Gill's opinion (after mischaracterizing it as failing to address

20   plaintiff's retained work capacity in spite of her impairments) and merely made

21   findings contrary to it.   Accordingly, the Court finds that the ALJ's limited

22   consideration of Dr. Gill's opinion, for purposes only of the step three determination,

23   was not a legally sufficient reason to reject Dr. Gill's opinion on the whole. See

24   Lester, 81 F.3d at 830 (an ALJ must provide "specific and legitimate reasons

25   supported by substantial evidence in the record" to reject the opinion of a treating or

26   examining physician, even if contradicted by another physician); see also Lingenfelter

27   v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) (with respect to the requirement

28   to provide legally sufficient reasons to reject a treating physician's opinion, "an ALJ

cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it"); Smolen v. Chater, 80 F.3d 1273, 1286 (9th Cir. 1996) (ALJ who effectively rejected treating medical opinions committed legal error when he did so merely by disregarding the opinions and making contrary findings); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (finding inadequate ALJ's finding that objective factors, namely the claimant's functional abilities, pointed to an adverse conclusion when he made "no effort to relate any of these objective factors to any of the specific medical opinions and findings he reject[ed]").

In conclusion, the Court finds that reversal is warranted based on the ALJ's failure to properly consider the treating psychiatrist's opinion.

## CONCLUSION AND ORDER

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at 603; Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Where, as here, a claimant contends that she is entitled to an award of benefits because of an ALJ's failure to properly consider medical evidence, the Court applies a three-step framework. See Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1099-1102 (9th Cir. 2014); see also Burrell v. Colvin, 775 F.3d 1133, 1141-42 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.  Second, the Court determines whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful.  Third, if the Court concludes that no outstanding issues remain and further proceedings would not be useful, the Court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of the proceeding." Treichler, 775 F.3d at 1100-01 (citations omitted).  Only when all three elements are satisfied does a case raise the "rare circumstances" that allow the Court to exercise its discretion to remand for an award of benefits.  See id.

Here, while plaintiff has made a cursory assertion that she is entitled to an award of benefits (see Revised Jt Stip at 23), she has completely failed to proffer any argument for an award of benefits in light of the foregoing authorities and made no attempt to show that this case presents the rare circumstances that would warrant an immediate award of benefits.  This factor militates in favor of the Court exercising its discretion to remand for further proceedings.  See Vasquez v. Astrue, 572 F.3d 586, 597 (9th Cir. 2009) (declining to order an immediate payment of benefits where neither party presented any argument about the effect of the ALJ's errors, meaning that there were no facts presented that clearly indicated the proper outcome).

Two other considerations also militate in favor of the Court exercising its discretion to remand for further proceedings.  First, the record contains no vocational expert testimony reflecting that a person could not work with the limitations described by Dr. Gill's opinion.  See Harman v. Apfel, 211 F.3d at 1172, 1180 (9th Cir. 2000) (remanding for further proceedings in part because there was no testimony from the vocational expert that the limitations established by the improperly discredited evidence would render claimant unable to engage in any work); see also

1   Strauss v. Commissioner of the Social Sec. Admin., 635 F.3d 1135, 1138 (9th Cir.

2   2011) (same where the record does not demonstrate the claimant is disabled within

3   the meaning of the Social Security Act).

4         Second, the evidence in the record regarding a possible disability onset date is

5   ambiguous. See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (remanding for

6   further proceedings where the case has an "outstanding issue" of "when Luna's

7   disability began"); Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d

8   1294, 1300 (9th Cir. 1999) (same where disability onset date remained an unresolved

9   issue); House v. Colvin, 583 F. App'x 628, 629-30 (9th Cir. 2014) (now citable for

10  its persuasive value per Ninth Circuit Rule 36-3) (same after noting that "Social

11  Security regulations make clear that determination of a disability onset date is a

12  complex and fact-specific inquiry").

13        Based on its review and consideration of the entire record, the Court therefore

14  has concluded on balance that a remand for further administrative proceedings

15  pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here.  Accordingly, IT

16  IS HEREBY ORDERED that Judgment be entered reversing the decision of the

17  Commissioner of Social Security and remanding this matter for further administrative

18  proceedings.[3]

19

20  DATED:  June 23, 2015

21

22                           ROBERT N. BLOCK
                               UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

---

28     [3]      It is not the Court's intent to limit the scope of the remand.

11